**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

___Eastern___ District of __New York__
(State)

Case number (*If known*) _____ Chapter __11__

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
RECEIVED - BROOKLYN

FEB 22 2019 AM 09:03

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | |
|---|---|
| 1. **Debtor's name** | 150 Calyer LLC. |
| 2. **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names, and *doing business as* names | N/A |
| 3. **Debtor's federal Employer Identification Number (EIN)** | 8 2 – 3 4 7 8 5 1 0 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 150 ____ Calyer _____ <br> Number   Street | 1704 ____ Avenue M. _____ <br> Number   Street |
| | P.O. Box |
| Brooklyn ____ NY ____ 11222 <br> City   State   ZIP Code | Brooklyn ____ NY ____ 11230 <br> City   State   ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Kings _____ <br> County | _____ <br> Number   Street |
| | _____ <br> City   State   ZIP Code |

5. **Debtor's website (URL)**    N/A

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding  LLP)
☐ Other. Specify: _____

Debtor    150 Calyer LLC.                              Case number (if known)_____
          Name

7. **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

8  1  3  9

8. **Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☒ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

9. **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.  District _____    When _____    Case number _____
                                          MM / DD / YYYY

         District _____    When _____    Case number _____
                                          MM / DD / YYYY

10. **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☒ No

☐ Yes.  Debtor _____    Relationship _____

         District _____    When _____
                                      MM  /  DD  / YYYY

         Case number, if known _____

Debtor    **150 Calyer LLC.**
_____     Case number (if known)_____
Name

**11. Why is the case filed in _this_ district?**    _Check all that apply:_

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☒ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** _(Check all that apply.)_

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☒ Other Pending Auction _____

**Where is the property?** 150 CALYER STREET
                          Number    Street

BROOKLYN _____ NY _____ 11222
City                               State    ZIP Code

**Is the property insured?**

☐ No

☒ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**    _Check one:_

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☒ 1-49                ☐ 1,000-5,000          ☐ 25,001-50,000
☐ 50-99               ☐ 5,001-10,000         ☐ 50,001-100,000
☐ 100-199             ☐ 10,001-25,000        ☐ More than 100,000
☐ 200-999

**15. Estimated assets**

☐ $0-$50,000          ☒ $1,000,001-$10 million      ☐ $500,000,001-$1 billion
☐ $50,001-$100,000    ☐ $10,000,001-$50 million     ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000   ☐ $50,000,001-$100 million    ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million ☐ $100,000,001-$500 million   ☐ More than $50 billion

Debtor    150 Calyer LLC.                                    Case number (if known)_____
_____
Name

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million

- ☒ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million

- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

████  **Request for Relief, Declaration, and Signatures**

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

☑ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

☑ I have been authorized to file this petition on behalf of the debtor.

☑ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   02   21   2019
              MM  / DD / YYYY

✗ _[signature]_ ⁱ          Leszek Siedlecki
Signature of authorized representative of debtor        Printed name

Title   Manager
_____

**18. Signature of attorney**

✗ _____      Date   02   21   2019
Signature of attorney for debtor                    MM   / DD / YYYY

Printed name _____

Firm name _____

Number      Street _____

City _____    State _____  ZIP Code _____

Contact phone _____      Email address _____

Bar number _____      State _____

**Fill in this information to identify the case:**

Debtor name ___150 Calyer LLC.___

United States Bankruptcy Court for the: ___Eastern___ District of ___New York___
                                                                            (State)

Case number (If known): _____

☐ Check if this is an
    amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | **Column A**<br>Amount of claim<br>Do not deduct the value<br>of collateral. | **Column B**<br>Value of collateral<br>that supports this<br>claim |
|---|---|---|

---

**2.1** Creditor's name

___NYC Department of Housing Preservation & Development___

Creditor's mailing address

___100 Gold Street___
___New York, NY 10038___

Creditor's email address, if known

_____

Date debt was incurred _____

Last 4 digits of account
number ___ ___ ___ ___

Do multiple creditors have an interest in the
same property?
☒ No
☐ Yes. Specify each creditor, including this creditor,
    and its relative priority.

_____
_____

Describe debtor's property that is subject to a lien

___150 Calyer Street, Brooklyn, NY 11222___

_____

Describe the lien
___Violations related___

Is the creditor an insider or related party?
☒ No
☐ Yes

Is anyone else liable on this claim?
☒ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed

$ 188,315.00     $ _____

---

**2.2** Creditor's name

___NYC Department of Housing Preservation & Development___

Creditor's mailing address
___100 Gold Street___
___New York, NY 10038___

Creditor's email address, if known

_____

Date debt was incurred _____

Last 4 digits of account
number ___ ___ ___ ___

Do multiple creditors have an interest in the
same property?
☒ No
☐ Yes. Have you already specified the relative
    priority?
    ☐ No. Specify each creditor, including this
        creditor, and its relative priority.

    _____
    _____

    ☐ Yes. The relative priority of creditors is
        specified on lines _____

Describe debtor's property that is subject to a lien

___150 Calyer Street, Brooklyn, NY 11222___

_____

Describe the lien
_____

Is the creditor an insider or related party?
☒ No
☐ Yes

Is anyone else liable on this claim?
☐ No
☒ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed

$ 3,000.00     $ _____

---

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional
   Page, if any.**                                                                                      $ _____

Debtor _____    Case number (if known)_____

Name

| | |
|---|---|
| **Part 1:** | **Additional Page** |

Column A
Amount of claim
Do not deduct the value
of collateral.

Column B
Value of collateral
that supports this
claim

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

2._  Creditor's name

Nagin Family Trust

Creditor's mailing address

50 Bank Street
New York, NY 10014

Creditor's email address, if known

_____

Date debt was incurred _____

Last 4 digits of account
number      __ __ __ __

Do multiple creditors have an interest in the
same property?
☒ No
☐ Yes. Have you already specified the relative
priority?
   ☐ No. Specify each creditor, including this
   creditor, and its relative priority.
   _____
   _____
   _____

   ☐ Yes. The relative priority of creditors is
   specified on lines _____

Describe debtor's property that is subject to a lien

150 Calyer Street, Brooklyn, NY 11222

_____

Describe the lien
Mortgage Loan
_____

Is the creditor an insider or related party?
☒ No
☐ Yes

Is anyone else liable on this claim?
☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed

$  3,055,052.78          $_____

2._  Creditor's name

Environmental Control Board

Creditor's mailing address

66 John Street
New York, NY 10038

Creditor's email address, if known

_____

Date debt was incurred _____

Last 4 digits of account
number      __ __ __ __

Do multiple creditors have an interest in the
same property?
☒ No
☐ Yes. Have you already specified the relative
priority?
   ☐ No. Specify each creditor, including this
   creditor, and its relative priority.
   _____
   _____
   _____

   ☐ Yes. The relative priority of creditors is
   specified on lines _____

Describe debtor's property that is subject to a lien

150 Calyer Street, Brooklyn, NY 11222

_____

Describe the lien
Violations related
_____

Is the creditor an insider or related party?
☒ No
☐ Yes

Is anyone else liable on this claim?
☐ No
☒ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed

$  136,370.00          $_____

Official Form 206D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page ___ of ___

Debtor _____    Case number (if known)_____
          Name

## Part 2:  List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |

Form 206D          Official Part 2 of **Schedule D: Creditors Who Have Claims Secured by Property**          page ___ of ___

**Fill in this information to identify the case:**

Debtor name _IJO CALYER LLC._

United States Bankruptcy Court for the: _EASTERN_ District of _N.Y_
(State)

Case number (If known): _____

☐ Check if this is an
amended filing

## Official Form 206H
# Schedule H: Codebtors
12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach
the Additional Page to this page.

1. **Does the debtor have any codebtors?**
   ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.
   ☐ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G*. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | Check all schedules that apply: |
| 2.1 _119A CALYER LLC._ | Street _119A CALYER Street_<br>City _BROOKLYN_ State _NY_ ZIP Code _11222_ | _NACIN Family Trust_ | ☐ D<br>☐ E/F<br>☐ G |
| 2.2 _____ | Street _____<br>City _____ State _____ ZIP Code _____ | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.3 _____ | Street _____<br>City _____ State _____ ZIP Code _____ | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.4 _____ | Street _____<br>City _____ State _____ ZIP Code _____ | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.5 _____ | Street _____<br>City _____ State _____ ZIP Code _____ | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.6 _____ | Street _____<br>City _____ State _____ ZIP Code _____ | _____ | ☐ D<br>☐ E/F<br>☐ G |

Debtor _____     Case number (if known) _____
            Name

| | Additional Page if Debtor Has More Codebtors |

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | *Check all schedules that apply:* |

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

2.___  _____

Street _____

_____

City          State          ZIP Code

❏ D
❏ E/F
❏ G

# ACKNOWLEDGEMENT COPY

## ARTICLES OF ORGANIZATION
## OF
## 150 CALYER LLC

Under Section 203 of the Limited Liability Company Law

**FIRST:**  The name of the limited liability company is:

### 150 CALYER LLC

**SECOND:**  The county, within this state, in which the office of the limited liability company is to be located is KINGS.

**THIRD:**  The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

SOLOMON ROSENGARTEN, ESQ.
1704 AVENUE M, STE. 2
BROOKLYN, NY 11230

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

TRUDI WINTER, ORGANIZER  (signature)
_____
TRUDI WINTER , ORGANIZER
BLUMBERGEXCELSIOR
236 BROADWAY
MENANDS, NY 12204

**Filed by:**
BLUMBERGEXCELSIOR CORPORATE SERVICES, INC.
236 BROADWAY
MENANDS, NY 12204

## BLUMBERGEXCELSIOR CORPORATE SERVICES INC. (39)
## DRAWDOWN
## CUSTOMER REF# 226090

**N.Y.S. DEPARTMENT OF STATE**
**DIVISION OF CORPORATIONS AND STATE RECORDS**          ALBANY, NY 12231-0001

### ONLINE FILING RECEIPT

===========================================================================

ENTITY NAME: 150 CALYER LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)          COUNTY: KING

===========================================================================

FILED:11/21/2017 DURATION:********* CASH#:171121010319 FILE#:171121010319
                              DOS ID:5238765

        FILER:                                        EXIST DATE
        ------                                        ----------
        BLUMBERGEXCELSIOR CORPORATE SERVICES, INC.    11/21/2017
        236 BROADWAY
        MENANDS, NY 12204

        ADDRESS FOR PROCESS:
        --------------------
        SOLOMON ROSENGARTEN, ESQ.
        1704 AVENUE M, STE. 2
        BROOKLYN, NY 11230

        REGISTERED AGENT:
        -----------------



        The limited liability company is required to file a Biennial Statement with the
        Department of State every two years pursuant to Limited Liability Company Law
        Section 301. Notification that the Biennial Statement is due will only be made via
        email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
        receive an email notification when the Biennial Statement is due.

===========================================================================

SERVICE COMPANY: BLUMBERGEXCELSIOR CORPORATE SERVICES INC.-39
SERVICE CODE: 39

        FEE:          225.00              PAYMENTS      225.00
                      ----------                        --------
        FILING:       200.00              CHARGE          0.00
        TAX:            0.00              DRAWDOWN       225.00
        PLAIN COPY:     0.00
        CERT COPY:      0.00
        CERT OF EXIST:  25.00

===========================================================================

        226090                                      DOS-1025 (04/2007)

Authentication Number: 1711210332  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at
http://ecorp.dos.ny.gov

# STATEMENT OF ORGANIZATION

## OF

## THE SOLE ORGANIZER

## OF

## 150 CALYER LLC

**THE UNDERSIGNED,** being the sole organizer of the within named limited liability company (the "Company"), formed under Article 2 of the Limited Liability Company Law of the State of New York (LLCL), does hereby state that:

1.　The Articles of Organization of the Company under LLCL § 203 were filed by the Department of State of the State of New York on　November 21, 2017.　A copy of the Articles of Organization and the original receipt of the Department of State showing payment of the filing fee are annexed hereto. The same hereby, is ordered filed with the Operating Agreement of the Company.

2.　At the time of its formation, the Company had at least one member/manager, to wit:

**LIESZEK SIEDLECKI**

3.　The sole organizer herein is neither a member or a manager of the Company.

4.　The undersigned, effective the date upon filing of the limited liability company , has fulfilled the duties as the sole organizer of 150 CALYER LLC , in accordance with the provisions set forth in LLCL § 203 and herewith relinquishes all further duties relating to the organization and formation of the Company.

**IN WITNESS WHEREOF,** I have made and subscribed this Statement of Organization on the date of filing.

_____

TRUDI WINTER
*Sole Organizer*

# OPERATING AGREEMENT OF

# 150 CALYER LLC

**AGREEMENT** dated this 21ˢᵗ day of November, 2017 by and between Leszek Siedlecki

(individually a "Member" and collectively by the "Members).

**WITNESSTH**

 **WHEREAS**, the Members have formed a Limited Liability Company pursuant to and in accordance with the New York Limited Liability Law, as amended from time to time:

 **WHEREAS**, the Members desire to set forth their agreement as to the business and management of the Company and their interest therein:

 **NOW, THEREFORE,** in consideration of the contributions to be made as provided herein and of these premises, the parties hereto agree as follows:

ARTICLE I

DEFINITIONS

1.1 <u>Definitions</u>.  In this Agreement, the following terms shall have the meanings set forth below:
 (A) Act shall mean the New York Limited Liability Company Law.
 (B) Agreement shall mean this Operating Agreement, as originally executed and as amended from time to time in accordance herewith and with the Act.
 (C) Agreed Value of the contributed Property means the fair market value of the property at the time of contribution as determined the by Members. The Members shall use such method as they deem reasonable and appropriate to allocate the Agreed Value of contributed Properties among each separate property.
 (D) Articles of Organization shall mean the Articles of Organization of the Company, as filed with the New York Secretary of State, as amended from time to time in accordance herewith and with the Act.
 (E) Bankruptcy of a Member shall mean

   1. the entry of an order for relief with respect to that Member in a proceeding under the United States Bankruptcy Code, as amended from time to time, or

2.  the Member's initiation, whether by filing a petition, beginning a proceeding or in an answer to a proceeding commenced by another Person, of any action for liquidation, dissolution, receivership or other similar relief, or the Member's application for, or consent to the appointment of, a trustee, receiver or custodian for its assets. For purposes of this definition, a Member's consent shall be deemed to have been given if an order appointing a trustee, receiver or custodian as entered by a court of competent jurisdiction and is not dismissed within ninety days (90) after its entry.

(F) Capital contribution of, or attributed to a Member shall mean the total contributions to the capital of the Company, whether in cash, property, services or any combination thereof, made, performed by, or attributed to or deemed attributed to, such Member, valued on the date of contribution or commitment to contribute and set forth herein.

(G) Capital Interest of a Member, as of any date, shall be expressed as a percentage determined by diving

1.  the amount of the balance of the positive Capital Account associated with the Member's Membership Interest

2.  by the aggregate balances of the Capital Accounts of all Members whose accounts have positive balances, as adjusted through such date in accordance herewith.

(H) Code shall mean the Internal Revenue Code of 1986, as amended, or any corresponding provision of any succeeding law. Company shall refer to **150 CALYER LLC**.

(I) Fiscal Year shall mean the Company's accounting, tax, fiscal year which shall be the calendar year.

(J) Initial Capital contribution of a Member shall mean its initial contribution to the capital of the Company pursuant to this Agreement.

(K) Involuntary withdrawal of a Member shall mean its withdrawal as a Member as a result of an event described in Section 1.1(u) paragraphs (i), (ii), (iii) or (iv).

(L) Management Interest of a Member shall mean its right to participate in the management of the business and affairs of the Company, including any right to vote

on, consent to, or otherwise participate in, any decision or action of or by the Members hereunder or under the Act.

(M)    Member shall mean each Person who

1. executes a counterpart of this Agreement as a Member as of the date hereof or

2. is admitted as a Member after the date hereof in accordance herewith, provided that, in each case, a Member shall always have a management interest.

(N) **Membership Interest of a Member** shall mean a Member's entire interest in the Company, including its Capital Interest in the Company and Management Interest.

(O) **Net Profits and Net Losses** shall mean, for each Fiscal Year (or other period for which they are determined), the Income and gain and the losses and deductions of the Company, respectively, in the aggregate or separately stated as appropriate, determined in accordance with generally accepted accounting principles consistently applied.

(P) **Person** shall mean any individual, partnership limited liability company, corporation, joint venture, trust, association or any other entity, domestic or foreign, and its respective heirs, executors, administrators, legal representatives, successors and assigns where the context of this agreement so permits.

(Q) **Transfer** shall mean any sale, assignment, transfer, gift, exchange or bequest or other disposition or an Interest, in any manner, voluntary or involuntary, by operation of law or otherwise but shall not include a pledge, hypothecation or other contingent transfer of rights unless or until such contingency occurs.

(R) **Treasury Regulations** shall mean regulations promulgated under the Code in effect as of the date hereof or hereafter amended or adopted

(S) **Voluntary withdrawal of a Member** shall mean his or its withdrawal as a Member as a result of an event described in section 1.1(u) paragraph (1) or (2).

(T) **Withdrawal Event with respect to any Member**, shall mean its (i) death or disability of a Member, dissolution, expulsion as a Member or adjudication of incompetency, as applicable; (ii) Bankruptcy; (iii) making a general assignment for the benefit of creditors;

(U) Interest becoming subject to enforcement of rights of any of his or its creditors, unless such rights are released within ninety (90) days he or it receives notice of the creditor's action

1. Voluntary retirement or withdrawal from the Company; or,

2. any other event that terminates a Member's Membership in the Company or otherwise causes the dissolution of the Company under the Act.

## ARTICLE II

## FORMATION AND BUSINESS OF THE COMPANY

2.1 **Formation**. The Company was organized on November 21, 2017 in accordance with and pursuant to the Act.

2.2 **Name**. The name of the Company is **150 CALYER LLC**. The Company may do business under the name, as permitted by applicable law, under any other name determined from time to time by the Members.

2.3 **Purpose of the Company**. The purpose of the Company shall be to conduct any lawful business or activity whatsoever as, permitted by applicable law and as determined from time to time by the Members. The Company may exercise all powers necessary to or reasonable connected with the Company's business from time to time, and may engage in all activities necessary, customary, related or incidental to any of the foregoing. The authority granted to the Managing Member to bind the Company shall be limited to actions necessary or convenient to this business.

2.4 **Principal Place**. The Company's principal place of business shall be located at: 485 Ridge Road, Campbell Hall, NY 10916.

2.5 **Members**. The names, addresses and Capital Interest of, the Members Are set forth as Exhibit A attached hereto, as amended from time to time.

2.6 **Management of the Company**. Except as otherwise set forth in this Agreement the management of the Company and all decisions relating to the business affairs of the Company shall be made by the Managing Member.

## ARTICLE III

## MEMBERS

3.1 **Liability for Company Debt**. No Member shall be personally liable for any debts, losses or obligations of the Company by reason of its being a Member, except to the extent of its Capital contribution and any obligation to make a Capital contribution.

3.2 **Conflicts of Interest**. Except as limited by the provisions of Article VII, it shall not be a conflict of interest for a Member, including the Managing Member to engage in activities that may be competitive with the Company however nothing shall permit any Member, including the Managing Member, to use or appropriate Company property of any type or kind in the conduct of those other activities.

3.3 **Dealing with the Company**. Subject to the requirements of this Agreement, any Member thereof may make loans to, borrow from and transact such other business with, the Company as may be approved by the Members in accordance with this Agreement. Loans made pursuant to this section shall comply with the provisions of section 4.7.

3.4 **Management Rights**. No Member other than the Managing Member shall have the right to bind the Company. Any Member making such unauthorized act shall indemnify the Company for any costs or damages incurred by the Company as the result of such act.

3.5 **Acts Reserved to Members.** The following actions shall require the consent of all of the Members:

    a) Incur or refinance the indebtedness of the Company (or to make a guaranty or suretyship) in excess of $100,000.

    b) Effect the sale of Company property in other than the normal course of business.

    c) Amend this Agreement.

    d) File a voluntary petition in bankruptcy or an assignment for the benefit of creditors.

    e) Merge, consolidate, liquidate or dissolve the Company.

    f) No Preemptive Rights. No Member shall have any preemptive, preferential or other right with respect to

        (i)     making additional Capital contribution,

        (ii)    the issuance or sale of Interests by the Company,

(iii)    the issuance of any obligations, evidences of indebtedness or securities of the Company convertible into, exchangeable for, or accompanied by, any rights to receive, purchase, purchase or subscribe to, any Percentage Interests, or

(iv)    the issuance of any right, of subscription to or right to receive, or any warrant or option for the purpose of, any of the foregoing.

## ARTICLE IV

## CAPITAL; CAPITAL ACCOUNTS

4.1 **Initial Capital Contributions.** Upon the execution of this Agreement, the Member shall contribute to the Company the cash and property as set forth in Exhibit A.

4.2 **Additional Capital Contributions.** Members shall be required to make the capital contribution as set forth in section 4.1 of this Agreement. No Member shall be required to make additional Capital Contributions unless required by the vote of Member holding more than two-thirds (2/3) in interest to enable the Company to continue its business.

4.3 **No Interest on Capital Contributions.** Member shall not be paid interest on their Capital Contribution.

4.4 **Return on Capital Contributions.** Except as otherwise provided in this Agreement, no Member shall have the right to receive any return of any Capital Contribution.

4.5 **Form of Return of Capital.** If a Member is entitled to receive a return of a Capital Contribution, the Company may distribute cash, notes, property or a combination thereof to the Member in return of the Capital contribution.

4.6 **Capital Accounts.** A separate Capital Account shall be maintained for each Member. If the Members determine that the Capital Accounts must be adjusted to comply with section

704(b) of the Code, then the method in which Capital Accounts are maintained shall be so modified. Any such change in the maintenance of the Capital Accounts shall not materially alter the economic agreement among or between Members.

4.7 **Liability of Managing Member.** The Managing Member shall have no personal liability for repayment of any Capital Contribution to any Member.

# ARTICLE V

## PROFIT, LOSS AND DISTRIBUTIONS

5.1 **Distributions.** Cash available for distributions shall be distributed at such time and in such amounts as may be determined by the Members in accordance with the Capital Interest of each such Member.

5.2 **Limitation on Distributions.** No distributions shall be declared as paid unless, after giving effect thereto, the assets of the Company exceed the Company's liabilities.

5.3 **Allocation of Profits and Losses.** After giving effect to special allocations as may be required for any taxable year of the Company, Profits and Losses shall be allocated to the Members in accordance with the percentages interest of each such Members.

5.4 **Offsets.** The Company shall offset all amounts owing to the Company by a Member against any Distribution to be made to such Members.

5.5 **Liquidation and Dissolution.** If the Company is liquidated, the assets of the Company shall be distributed to the Members in accordance with their respective Capital Interests, after taking into account the allocations of Profit or Loss, if any.

5.6 **Amendment.** The Members are hereby authorized, upon the advice of the Company's tax advisor, to amend this Article to comply with the Code and the Regulations promulgated under Code section 704(b); provided, however, that no amendment shall materially adversely affect distributions to a Member without the Member's prior consent.

# ARTICLE VI

## TAXES

6.1 **Tax Returns.** The Managing Member, at the expense of the Company, shall cause to be prepared and filed all necessary Federal and State income tax returns for the Company and shall prepare and deliver to each Member promptly at the end of the Company's Fiscal Year all information necessary for the preparation of the Member's tax returns.

6.2 **Tax Elections.** The Company shall make the following elections on the appropriate tax returns:

    A. To adopt the calendar year as the Fiscal Year;

    B. To adopt the cash method of accounting and to keep the Company's books and records on the income tax method;

    C. If a Distribution as described in section 734 of the Code occurs of if the Economic Interest of a Member is Transferred as described in section 743 of the Code occurs, upon the written request of any Member, to elect to adjust the basis of the property of the Company pursuant to section 754 of the Code;

    D. To elect to amortize the organizational expenses of the Company and the start-up expenses of the Company under section 195 of the Code ratably over a period of sixty months as permitted by section 709(b) of the Code; and,

    E. Any other election that the Members deem appropriate and in the best interest of the Company. Neither the Company nor any Member may make an election for the Company to be excluded from the application of Subchapter K of the Chapter 1 of Subtitle A of the Code or any similar provisions of this Agreement shall be interpreted to authorize any such election.

6.3 **Tax Matters Partners**. The Managing Member shall be the "tax matters partner" of the Company pursuant to section 6213(a) (7) of the Code. The Managing Member shall not resign unless the Members have designated a new Managing Member or new "tax Matters Partner."

## ARTICLE VII

## TRANSFERABILITY

7.1 **Restriction of Transfers.** No Member may transfer all, or any portion of, or rights in, its Membership Interest. The Members agree that the restriction on the transfer of Interests hereunder is fair and reasonable in light of the Code requirements affecting the Company's classification as a partnership for tax purposes.

7.2 **Certain Transfers of No Effect.** Any Transfer or attempted Transfer of an Interest in violation of the terms of this Agreement shall be null and void and have no effect. Each Transferor hereby indemnifies the Company and remaining Members against any and all loss, liabilities and damages, including without limitation, tax liabilities or loss of tax benefits, arising directly or indirectly out of any Transfer or purported Transfer in violation of this Agreement.

7.3 **Transferee Not A Member.**
(a) No person acquiring any Interest pursuant to this section other than a Member shall become a Member unless such Person is approved by the consent of two thirds (2/3) in Interest of the Members. If no such approval is obtained, the Person's Interest shall only entitle Person to receive the distributions of profits and losses to which the Member from whom or which such person received such Interest would be entitled. Any such approval may be subject to terms and conditions imposed by the Members. Acquires of such Interest shall be subject to the same restrictions on Transfer as are Interests held by Members. The provisions of this section shall not apply to
(I)     the Transfer of Interests to any other Member
(II)    the issuance of a new Membership Interest by the Company directly to a new Member or
(III)   the Transfer of an Interest of a Bankrupt, dissolved or incompetent Member or to his or its successor in interest.

## ARTICLE VIII

## WITHDRAWAL OF A MEMBER

8.1 **Right to Withdraw.** The Voluntary withdrawal of a Member shall be permitted with the written consent of two-thirds (2/3) of the Percentage Interests, excluding the withdrawing Member or upon six months prior notice to the Company.

8.2 **Effect of Withdrawal.**

(A) If the business of the Company continued in accordance with the provisions of this Agreement after a Voluntary withdrawal, the withdrawn Member shall not be entitled to receive any amount of liquidation of his or its Membership Interest until the dissolution and winding up of the Company but shall, on and as of the date of withdrawal Event, become an assignee of the economic component of his or its former Membership Interest, without the right to participate in the management of the Company. After any Voluntary Withdrawal, the relative Percentage Interests of the remaining Members for voting purposes only shall be determined as thought the withdrawn Member's Membership Interest has been repurchased.

(B) If the business of the Company is continued in accordance with the provisions of this Agreement after an Involuntary withdrawal, the withdrawn Member shall be entitled to have its Interest repurchased [receive an amount of liquidation of its Membership Interest determined as set forth herein] as provided in this Agreement.

(C) If the withdrawal Event results in the dissolution of the Company, the withdrawn Member shall be treated as any other Member in the liquidation of the Company's assets pursuant to this Agreement.

(D) Notwithstanding anything contained in this section to the contrary, the Company may, if it deems it appropriate to do so, repurchase the Member's Membership Interest as provided in section.

8.3 **Damages for Breach.** If a Voluntary Withdrawal Event of a Member occurs in breach of this Agreement, such withdrawn Member shall pay to the Company within ninety (90) days following the date of the withdrawal event the sum of *ten thousand dollars* ($10,000) as liquidated damages for such breach, and not as a penalty, the parties acknowledge that such amount is reasonable in light of the amount of damages that such breach would cause this Company.

8.4 **Repurchase of Interest.**

(A) If the business of the Company is continued in accordance with the provision of this Agreement after a Withdrawal Event, the Company may repurchase the withdrawn Member's Membership Interest at a Purchase Price determined and payable as set forth below. The closing of the Purchase Price shall take place within ten (10) days after the parties have agreed on the Purchase Price or it has otherwise been determined in accordance herewith.

(B) If the Company, acting by its Members, and the Withdrawn Member or its successor-in-interest, as the case by be, cannot agree upon the Purchase Price within thirty (30) days after the Company receives notice of the Withdrawn Event, the Purchase Price shall be equal to the book value of the withdrawn Member's equity in the Company, computed in

accordance with generally accepted accounting principles, as of the end of the Fiscal Year preceding the year in which the Withdrawal Event occurred. Book value shall be determined by the Company's accountants, and determination shall be binding.

(C) Where the Company repurchases the Membership Interest of a Member who has withdrawn in breach of this Agreement, the Purchase Price shall be reduced by any amount to be paid by the Withdrawn Member as liquidated damages pursuant to this Agreement.

## ARTICLE IX

## DISSOLUTION AND TERMINATION

9.1 **Events Causing Dissolution and Winding Up**. The Company shall be dissolved and wound up upon the first to occur of the following events:

      (A) the written consent of two-thirds (2/3) in interest of the Members;

      (B) a Withdrawal Event with respect to any Member unless the business of the Company is continued as provided below. Notice of any Withdrawal Event shall be given to each of the other Members by the Withdrawn Member or his or its successor-in-interest, if any, within sixty (60) days after the date thereof;

      (C) the sale or disposition of all or substantially all of the business or assets of the Company; or

      (D) the entry of a decree of a judicial dissolution under section 702 of this Act.

9.2 **Election to Continue the Business of the Company.** Notwithstanding in the provisions of section 9.1 of this Agreement, an event specified in section 9.1B shall not result in the dissolution, winding up and termination of the Company, if within ninety (90) days after the occurrence of any such event, a majority in Capital Interests of the remaining Members holding the right to receive more than fifty percent (50%) of the remaining Member's aggregate rights to receive Net Profits over the life of the Company elect in their sole discretion to continue the business of the Company. If the business is continued, any Member that does not vote to do so shall nevertheless continue as a Member.

If the Members elect to continue the business of the Company, the Company shall continue as a Limited Liability Company pursuant to the Act under this Agreement until a subsequent event causing dissolution hereunder or under the Act, in which event an election as to whether or not to continue the business of the Company will again be required.

9.3 **Winding Up of the Company.** Upon the dissolution of the Company the Managing Member, or if there is no Managing Member such other person or persons designated by the

Members, may, in the name of and on behalf of the Company, prosecute and defend suits, whether civil, criminal or administrative, and sell and close the Company's business, dispose of the Company's property, discharge the Company's liabilities and distribute to the members any remaining assets of the Company, all without affecting the liability of Members. Upon winding up of the Company, the assets shall be distributed as follows:

(A) To creditors, including any Member who is a creditor, to the extent permitted by law, in satisfaction of liabilities of the Company, whether by payment or by establishment of adequate reserves, other than liabilities or distribution to Members under section 507 or section 509 of the Act;

(B) To Members and former Members in satisfaction of liabilities for Distribution under section 507 and 509 of the Act; and,

(C) To Members first for the return of their Capital contributions, to the extent not previously returned, and second respecting their Interests, in the proportions in which the members share in Distribution in accordance with this Agreement.

9.4 **Termination**. Upon completion of the Dissolution, winding up, liquidation and distribution of assets of the Company, the Company shall be deemed terminated.

9.5 **Articles of Dissolution.** Within ninety (90) days following the dissolution and commencement of winding up of the Company, or at any other time when there are no Members, Articles of Dissolution shall be prepared, executed and filed in accordance with the Act.

9.6 **Nonrecourse to Other Members.** Except as provided applicable law or as expressly provided in this Agreement, upon dissolution, each Member shall receive a return of his or its Capital Account solely from the assets of the Company. If the assets of the Company remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the Capital Account of any Member, such Member shall have no recourse against any other Member.

## ARTICLE X

## MANAGEMENT AND CONTROL AGREEMENT

10.1 Managing Member.

A. **LESZEK SIEDLECKI** shall be the Managing Member of the Company (the "Managing Member") and, in such capacity, shall manage the Company in accordance with this Agreement, the Managing Member is an agent of the Company's business, and

the actions of the Managing Member taken in such capacity and in accordance with this Agreement shall bind the Company.

B. **Managing the Company**. The Managing Member shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company and to take all such actions as it deems necessary or appropriate to accomplish the purpose of the Company as set forth herein. The Managing Member shall be the sole Person with the power to bind the Company, except and to the extent that such power is expressly delegated to any other Person by the Managing Member, and such delegation shall not cause the Managing Member to cease to be a Member or the Managing Member of the Company.

10.2 **Powers of the Managing Member**. The Managing Member shall have the right, power and authority, in the management of the business and affairs of the Company, to do or cause to be done any and all acts, at the expense of the Company, deemed by the Managing Member to be necessary or appropriate to effectuate the business, purposes and objectives of the Company. Without limiting the generality of the foregoing, the Managing Member shall have the power and authority to:

    A. Make expenditures for the benefit of the Company and to incur obligations on behalf of the Company in order to implement the business and purposes of the Company;

    B. Employ or retain Persons, including any Member and any Affiliate of any Member, whether full-time or part-time, at the expense of the Company, to perform services in connection with the operation and management of the Company's business on such terms and for such compensation as the Managing Member shall determine;

    C. Negotiate, do any act, or enter into or execute and deliver, in furtherance of any or all of the purposes of the Company, any and all agreements, contracts, documents, certifications and other instruments of any nature deemed necessary, convenient or desirable in connection with the business and affairs of the Company, all of which may contain such terms, provisions and conditions as the Managing Member, in its sole and absolute discretion, shall deem appropriate;

    D. Sell, exchange, convey, trade, surrender, release, abandon or otherwise dispose of all or any part of the assets of the Company, at such price or amount, for cash, securities or other property, and upon such terms and conditions as the Managing Member, in the exercise of its sole and absolute discretion, deems advisable, appropriate or convenient and to be in the best interests of the Company;

E. Use the funds of the Company, including the Capital Contributions and borrowings, if any, for any purposes and on any terms that the Managing Member, in the exercise of its sole and absolute discretion, determines to be appropriate, including without limitation, the costs of conducting the business and activities of the Company, the payment of its obligations and the repayment of its borrowing, if any;

F. Borrow money and incur indebtedness required for the business and affairs of the Company and, if security is required therefore, to secure the repayment of such borrowings by executing mortgages or deeds of trust, pledging or otherwise encumbering or subjecting to security interests, all or any part of the assets of the Company; [make a guaranty or suretyship]; to obtain replacements of any loan, and to repay, in whole or in part, refinance, increase, modify, consolidate, or extend the maturity of any indebtedness created by such borrowings, or any such mortgage, deed of trust, pledge, encumbrance, or other security device, all upon such terms as the Managing Member deems, in its sole and absolute discretion, to be in the best interests of the Company;

G. Acquire and enter into any contract of insurance which the Managing Member deems necessary or appropriate for the protection of the Company and the Managing Member or for the conversation of Company assets;

H. Purpose or cause to be prepared reports, statements and other relevant information for dissemination to Member;

I. Open accounts and deposit and maintain funds in the name of the Company in banks, trust companies or securities broker dealers and designated the signatories thereon; provided, however, that the Company's funds shall not be commingled with the funds of any other Person;

J. Establish a record date with respect to all actions to be taken hereunder that require a record date be established, including with respect to allocations and distributions; and,

K. Bring and defend on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise. The expression of any power or authority of the Managing Member in this Agreement shall not in any way limit or exclude any other power or authority which is not specifically or expressly set forth in the Agreement.

10.3 **Compensation of Managing Member.** The Managing Members will not receive or be entitled to any fees of any other compensation from the Company for the services enumerated herein or for any other services, other than the Management Fee. The Management Fee shall be payable to the Managing Member Quarterly with ten (10) days

after the of each Fiscal Quarter commencing with the Fiscal Quarter ending. The Management Fee is intended by the Members to constitute a guaranteed payment, as such term is used in section 707(c) of the Code.

10.4 **Reimbursement**. The Company reimbursement the Managing Member for all ordinary and necessary out-for-pocket expenses incurred by the Managing Member on behalf of the Company against receipts and documentation in accordance with the practices of the Company.

10.5 **No Management by Other Member**. Except as otherwise expressly provided herein, no Member other than the Managing Member shall take part in the day-to-day management, or the operation or control of the business and affairs of the Company. Except and only to the extent expressly delegated by the Managing Member, no Member or other Person other than the Managing Member shall be an agent of the Company or have the right, power or authority to transact any business in the name of the Company or to act for or on behalf of or to bind the Company.

10.6 **Reliance by Third Parties**. Any Person dealing with the Company or the Managing Member  may rely upon a certificate signed by the Managing Member as to;
   a. the identity of the Managing Member or any other Member hereto;
   b. the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Managing Member or in any other manager germane to the affairs of the Company;
   c. the Persons who are authorized to execute and deliver any instrument or document of or on behalf of the Company; or,
   d. any act or failure to act by the Company or as to any other matter whatsoever involving the Company or any Member.

10.7 **Fiduciary Duties.**
   (A) Conflicts. Unless otherwise expressly provided herein,
      (1) whenever a conflict of interest exists or arises relating to the Managing Member; or
      (2) whenever this Agreement or any other agreement contemplated herein or therein provides that the Managing Member shall act in a manner that is, or provides terms that are, fair and reasonable to the Company or any Member, the Managing Member shall resolve such conflict of interest, taking such action or providing such terms, considering in each case the relative interest of each party (including its own interest) to such conflict, agreement, transaction or situation and the

benefits and burdens relating to such interests, any customary or accepted industry practices, and applicable generally accepted accounting practices or principles. In the absence of bad faith by the Managing Member, the resolution, action or term so made, taken or provided by the Managing Member shall not constitute a breach of its Agreement or any other agreement contemplated herein or of any duty or obligation of the Managing Member or otherwise, (b) Discretion. Whenever in this Agreement the Managing Member is permitted or required to make a decision.

    (1.1)    in its "discretion" or under a grant of similar authority or latitude, the Managing Member shall be entitled to consider only such interests and factors as it desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person, or

    (1.2)    in its "good faith" or under another express standard, the Managing Member shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or other applicable law.

10.8 **Removal of Managing Member**. The Members may, for "cause" (as hereinafter defined) by:

(a) affirmative vote of Members hold at least 50% of the Company Interests, remove the Managing Member by delivery of a written instrument, effective immediately upon written instrument shall also name a substitute Managing Member to replace the Managing Member being removed. The substitute Managing Member shall be admitted as a Managing Member of the Company immediately prior to the withdrawal of the removed Managing Member and shall continue the business of the Company. As used in this section 10.8 only, "cause" shall mean fraud, malfeasance and or breach of the Managing Members standard of care.

(b) a Managing Member removed pursuant to section 10.8

(I) shall sell, and the substitute Managing Member appointed pursuant to section

10.8

(II) shall purchase, within ninety (90) days after the effective date of removal, the entire Company Interest of the Managing Member being removed for a purchase price equal to the positive balance of the removed Managing Member's Capital equal to the positive balance of the removed Managing Member's Capital Account, as determined by the Company's independent certified public accountants, and the substitute Managing Member shall succeed to the entire LLC Interest and Capital Account of the removed Managing Member and shall possess all rights with respect thereto. If the removed Managing Member shall have a negative balance in its Capital Account on the effective date of removal, the removed Managing Member shall be obligated to restore such Capital Account to zero immediately upon its removal, and the substitute Manager Member shall succeed to the entire LLC Interest of the removed Managing Member. A Managing Member removed pursuant to this section 10.8 shall not be liable for any obligations of the Company arising after the effective date of its removal.

## ARTICLE XI

## **MEETINGS OF MEMBERS**

11.1 **Call**. Meetings of the members may be called at any time by the Managing Member [or by Members holding at least 51% of the LLC Interests]. Notice of any meeting shall be given to all Members not less than ten (10) days nor more than thirty (30) days prior to the date of such meeting which notice may be waived by a Member either in writing or by his participation in the in the meeting. The Company shall not be required to hold an annual meeting of Members. Each Member may authorize any Person to act for him by proxy on all matters in which a Member is entitled to participate, including waving notice of any meeting, or voting or participating in a meeting. Every proxy must signed by the Member or his attorney-in-fact. Whenever a vote, consent or approval of Members is permitted or required under this Agreement, such vote, consent or approval may be given at a meeting of Member or by written consent.

11.2 **Conduct**. Each meeting of Members shall be conducted by the Managing Member or by such other Person who the Managing Member may designate. The Managing Member, in its sole discretion, shall establish all other provisions relating to meetings of Members, including notice of the time, place or purpose of any meeting at which any matter is to be voted on by any Members, waiver of any such notice, action by consent without a meeting, the establishment of a record date, quorum requirements, voting in person or by proxy or

any other matter with respect to the exercise of any right to vote.

## ARTICLE XII

## GENERAL PROVISIONS

12.1 **Notice**. Any notice, demand or other communication required or permitted to be given pursuant to this Agreement shall have been sufficiently given for all purposes if:

A. delivered personally to the party or to an executive office of the party to whom such notice, demand or other communication is directed; or,

B. sent by registered or certified mail, postage prepaid, addressed to the Member or the Company at his or its address set forth this Agreement. Except as otherwise provided in the Agreement, any such notice shall be deemed to be given three business days after the date on which it was deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and set as set forth in this section.

12.2 **Books of Accounts and Records**.

(A) at the expense of the Company, the Company shall maintain at the Company's principal place of business, records and accounts of all operations and expenditures of the Company, including, without limitation, the following records:

1. current list in alphabetical order of the name and mailing address of each holder of an interest in the Company, their facsimile numbers and with respect to the holders of interest in the Company, their respective shares of Net Profits and Net Losses, or information from which such shares can be derived.

2. a copy of the Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any such amendment has been executed;

3. copies of the Company's Federal, State and Local income tax returns and reports, if any, for the three (3) most recent Fiscal Years;

4. copies of this Agreement, as in effect from time to time;

5. any writings or other information with respect to each Member's obligation to contribute cash, property or services to the Company, including, without limitation, the amount of cash so contributed and a description and statement of the value of the property or services so contributed or to contributed;

6. any financial statements of the Company for the three most recent Fiscal Years;

7. minutes of every annual, special and court-ordered meeting of the Members; and,

8. any written consents obtained from the Members for actions taken by the Members without a meeting.

(B) upon ten (10) days advance notice, during normal business hours, any member or its representatives may, at its expense, inspect and copy the record described in this section for any purpose reasonable related to such Member's Interest.

12.3 **Amendments**. This Agreement contains the entire Agreement among the Members with respect to the subject matter of this Agreement, and supersedes each course of conduct previously Pursued or acquiesced in, and each oral Agreement and Representation previously made, by the Members with respect thereto, whether or not relied or acted upon. No usage of trade, whether or not relied or acted upon, shall amend this Agreement or impair otherwise affect any Member's obligations pursuant to this Agreement or any rights and remedies of a Member pursuant to this Agreement. No amendment to this Agreement shall be effective unless made in writing duly executed by all Members and specifically referring to the provision of this Agreement being amended.

12.4 **Headings**. The headings in this Agreement are for convenient only and shall not be used to interpret or construe any provision of this Agreement.

12.5 **Waiver**. No failure of a Member to exercise, and no delay by a Member in exercising, any right or remedy under this Agreement shall constitute a waiver or such right or remedy. No waiver by a Member of any such right or remedy under this Agreement shall be effective unless made in writing duly executed by all members and specifically referring to each such right or remedy being waived.

12.6 **Severability**. Whenever possible, each provision of this Agreement shall be interpreted in a manner as to be effective and valid under applicable law. However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to this minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity.

12.7 **Binding**. This Agreement shall be binding upon and insure to the benefit of all Members, and each successor and assignees of the Members, except that right or obligation of a Member under this Agreement may be assigned by such member to another Person without first obtaining the written consent of all other Members.

12.8 **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one of the same instrument.

12.9 **Governing Law**. This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of New York applicable to the Agreement and fully performed therein, and specifically the Act.

**IN WITNESS WHEREOF**, those signing this Agreement below conclusively evidence their agreement to the terms and conditions of this Agreement by so signing this Agreement.

LESZEK SIEDLECKI
Managing Member

**OPERATING AGREEMENT OF**
**150 CALYER LLC**

**EXHIBIT A**

| <u>NAME</u> | <u>TITLE</u> | <u>PERCENTAGE</u> |
|---|---|---|
| Leszek Siedlecki | Managing Member | 100% |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
www.nyeb.uscourts.gov

STATEMENT PURSUANT TO LOCAL
BANKRUPTCY RULE 1073-2(b)

DEBTOR(S): _150 CALYER LLC_____ CASE NO.: _____

      Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor (or any other petitioner) hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

[NOTE: Cases shall be deemed "Related Cases" for purposes of E.D.N.Y. LBR 1073-1 and E.D.N.Y. LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases: (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one or more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).]

☒ NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.

☐ THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:

1. CASE NO.: _____ JUDGE: _____ DISTRICT/DIVISION: _____

CASE STILL PENDING: (YES/NO): _____ *[If closed]* Date of closing: _____

CURRENT STATUS OF RELATED CASE: _____
                               (Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES: _____

_____

2. CASE NO.: _____ JUDGE: _____ DISTRICT/DIVISION: _____

CASE STILL PENDING: (YES/NO): _____ *[If closed]* Date of closing: _____

CURRENT STATUS OF RELATED CASE: _____
                               (Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES: _____

_____

[OVER]

DISCLOSURE OF RELATED CASES (cont'd)

3.  CASE NO.: _____  JUDGE: _____  DISTRICT/DIVISION: _____

CASE STILL PENDING: (YES/NO): _____  *[If closed]* Date of closing: _____

CURRENT STATUS OF RELATED CASE: _____
(Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES: _____

_____

NOTE: Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not be eligible to be debtors. Such an individual will be required to file a statement in support of his/her eligibility to file.

TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:

I am admitted to practice in the Eastern District of New York (Y/N): _____

CERTIFICATION (to be signed by pro-se debtor/petitioner or debtor/petitioner's attorney, as applicable):

I certify under penalty of perjury that the within bankruptcy case is not related to any case now pending or pending at any time, except as indicated elsewhere on this form.

_____          _____
Signature of Debtor's Attorney            Signature of Pro-se Debtor/Petitioner

                                          *150 Galyer Street*
                                          Mailing Address of Debtor/Petitioner

                                          *Brooklyn, NY 11222*
                                          City, State, Zip Code

                                          _____
                                          Email Address

                                          *(845) 283 - 6370*
                                          Area Code and Telephone Number

Failure to fully and truthfully provide all information required by the E.D.N.Y. LBR 1073-2 Statement may subject the debtor or any other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the dismissal of the case with prejudice.

NOTE: Any change in address must be reported to the Court immediately IN WRITING. Dismissal of your petition may otherwise result.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:      150 CALYER LLC                    Case No.
                                              Chapter

                              Debtor(s)
-------------------------------------------------------------x

### DECLARATION OF PRO SE DEBTOR(S)

All individuals filing for bankruptcy pro se (without an attorney), must provide the following information:

Name of Debtor(s):  150 CALYER LLC

Address:  150 CALYER Street, Brooklyn, NY 11222

Email Address:  NONE

Phone Number:  (845)

CHECK THE APPROPRIATE RESPONSES:

**FILING FEE**:

____✓PAID THE FILING FEE IN FULL

____APPLIED FOR INSTALLMENT PAYMENTS OR WAIVER OF THE FILING FEE

**PREVIOUS CASES FILED**: 1._____ 2._____ 3._____

**ASSISTANCE WITH PAPERWORK**:

____✓ NO ASSISTANCE WITH PREPARATION OF/FILING PETITION AND SCHEDULES

____ HAD ASSISTANCE WITH PREPARATION OF/FILING PETITION AND SCHEDULES

If Debtor had assistance, the following information must be completed:

        Name of individual who assisted:  _____

        Address:  _____

        Phone Number:  (____) _____

        Amount Paid for Assistance:  $_____

I/We hereby declare the information above under the penalty of perjury.

Dated: 2-22-19

_____
Debtor's Signature

_____
Joint Debtor's Signature

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

**In Re:**

150 CALYER LLC          **Case No.**

**Chapter**

**Debtor(s)**

---------------------------------------------------------------x


## VERIFICATION OF CREDITOR MATRIX/LIST OF CREDITORS

---

       The undersigned debtor(s) ~~or attorney for~~ the debtor(s) hereby verifies that the creditor matrix/list of creditors submitted herein is true and correct to the best of his or her knowledge.


Dated: 2-22-19

_____
Debtor

_____
Joint Debtor

_____
Attorney for Debtor


USBC-44                                      Rev. 3/17/05

150 Calyer Street LLC Matrix:

Environmental Control Board
66 John Street, Brooklyn NY 10038

Nagin Family Trust
50 Bank Street
New York, NY 10014